UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
ALEXANDRIA DIVISION

| | |
|---|---|
| TIFFANY CAMPBELL, on behalf of herself and all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> NORTHWEST FEDERAL CREDIT UNION, <br><br> Defendant. | No. <br><br> **CLASS ACTION COMPLAINT** <br><br> **TRIAL BY JURY DEMANDED** |

*Introduction*

1. Plaintiff brings this action and causes of action to challenge the unlawful and harassing practices of defendant Northwest Federal Credit Union related to its use of a standardized form, post-repossession notice, which fails to contain the required information, prior to selling the collateralized goods. Plaintiff seeks–for herself, those similarly situated, and for the general public–injunctive and declaratory relief, restitution, statutory damages, and costs and expenses.

*Jurisdiction and Venue*

2. This Court has jurisdiction under 28 U.S.C. § 1332(d)(2)(A).

3. The Court has jurisdiction over Defendant and venue is proper in this district under 28 U.S.C. § 1391(b), because the acts and transactions that give rise to this action occurred, in substantial part, in this district. Additionally, both Plaintiff and Defendant are domiciled within this district.

*Parties*

4. Plaintiff Tiffany Campbell ("Campbell") is a natural person and a resident and a citizen of the Commonwealth of Virginia, who entered into a contract for a motor vehicle which was financed by defendant Northwest Federal Credit Union, making it a secured party.

1

5. Defendant Northwest Federal Credit Union("Northwest" or "Defendant") is a federal credit union, with its principal place of business in the Herndon, Virginia, which provides direct financing and accepts assignment of financing from around the United States of America for installment contracts for collateralized goods (in this instance, the collateral was a motor vehicle that Plaintiff purchased), subject to various laws including, but not limited to, the Uniform Commercial Code (cited as the "UCC").

### Factual Allegations

6. On or about January 25, 2018, Campbell purchased a used 2012 Cadillac Escalade V8 (the "vehicle") from Moore Cadillac of Chantilly.

7. Campbell financed the vehicle purchase through Northwest by virtue of a Closed End Note, Disclosure, Loan and Security Agreement ("Security Agreement"). A copy of the Security Agreement is attached hereto as Exhibit 1.

8. Campbell purchased the vehicle primarily for her personal, family, or household purposes.

9. The vehicle is a consumer good, as defined by Virginia Code §8.9A-102(23).

10. The vehicle is a collateral, as defined by Virginia Code §8.9A-102(12).

11. Northwest is a secured party of the Security Agreement for the vehicle, as defined by Virginia Code §8.9A-102(73).

12. Campbell defaulted on her obligations under the Security Agreement.

13. Following Campbell's default on her obligations under the Security Agreement, Northwest repossessed the vehicle.

14. Virginia Code §8.9A-613 and 614 require that the creditor provide written notice to the debtor containing certain information and disclosures, following repossession and prior to disposition of the collateral.

15. Virginia Code §8.9A-613(1)(E) further provides that the notice must "state[ ] the time and place of a public disposition or the time after which any other disposition is to be made."

16. In other words, if a private sale is to be made after a public sale is unsuccessful, the creditor must disclose the time after which the private sale is to be made.

17. After repossession of the vehicle, on or about April 8, 2020, Northwest sent via U.S. Mail to Plaintiff a letter entitled "NOTICE OF OUR PLAN TO SELL PROPERTY" (the "Notice"), a copy of which is attached as Exhibit 2 and incorporated herein by reference.

18. Campbell received the Notice several days after the date on the letter.

19. Campbell read the Notice some time near the time that she received it.

20. The Notice (Exhibit 2) disclosed that the collateral would be sold by public auction, but failed to disclose the location of such sale. Instead, the notice merely provides that the sale will be at ADESA Washington DC.

21. No address for ADESA Washington DC is provided.

22. Confusingly, ADESA Washington DC is not located in Washington DC, but rather in Sterling, Virginia.

23. Moreover, Northwest violated Virginia Code § 8.9A-613(1)(E) by saying if Northwest cannot sell it at the dealer's auction, it will "thereafter attempt to sell the collateral by subsequent private sale".

24. This non-specific notice does not comply with the requirement for private sale, under which Northwest must "state[ ] the time and place of a public disposition or the time after which any other disposition is to be made."

25. In other words, Northwest violated Virginia Code § 8.9A-613(1)(E) by failing to state that if a public sale is unsuccessful, then after a specific, disclosed date and time, a private sale will be made.

26. Thus, the Notice failed to conform to legal requirements for such notice.

27. Subsequent to the Notice, Northwest sold the collateral.

28. The Notice is a standardized form that Northwest uses many times, after a debtor has failed to comply with the terms of a contract involving a collateral.

29. Northwest's omission on the Notice of the location of the public sale has deprived Campbell and the class members of their right to oversee the sale of the collateral and to place a bid at the auction for such goods, which resulted in concrete and tangible damage to such persons.

30. Northwest's omission on the Notice of the time after which a private sale may occur has deprived Campbell and the class members of their right to oversee the sale of the collateral and to redeem the collateral before said private sale, which resulted in concrete and tangible damage to such persons

31. As a result of the foregoing acts and omissions, Campbell and the class members were unable to attend and oversee the disposition of the collateral, in a manner in which the legislature has put in place to protect and safeguard debtors. Campbell and the class members were thus deprived of statutory verification rights which they would otherwise have had under the applicable laws. In other words, Campbell and the class members suffered an informational injury as a result of being deprived of disclosures to which they were legally entitled, and as a result of being supplied misleading and incomplete information. This injury also created a material risk of financial harm to debtors that the legislature intended to prevent by enacting various statutes, such as the UCC.

32. The acts and omissions of Northwest described above injured Campbell and the class members in a particularized way, in that Northwest was obligated by laws (including, but not limited to Virginia Code §8.9A-613, 614 and 616) to supply complete and non-misleading information to the debtor specifically, by virtue of the fact that Northwest had repossessed and

4

was attempting to sell the collateral. Moreover, Northwest was obligated by numerous laws to supply full information concerning the location of the public sale and the time after which a private sale would occur, not to the public at large, but to Plaintiff and class members specifically, as a pre-condition of selling the collateral.

33. As a result of Northwest's failure to provide proper notification prior to the disposition of the collateral, Northwest is not entitled to pursue any deficiency balance against the debtor.

34. As a result of Northwest's failure to provide proper notification prior to the disposition of the collateral, Northwest is liable for the damages specified under Virginia Code §8.9A-625.

35. Virginia Code §8.9A-625 provides that if a secured party fails to provide proper notification prior to the disposition of collateral that is consumer goods, the secured party is obligated for statutory damages in the amount not less than the credit service charge plus ten percent of the principal amount of the obligation, or the time price differential plus ten percent of the cash price.

36. Under Virginia Code §8.9A-626, when a secured creditor fails to comply with the UCC notice requirements, the proceeds of a disposition of collateral are presumed to be equal to the sum of the indebtedness. Thus, it is statutorily presumed that the secured party is due no deficiency after the disposition of the collateral.

37. The Class Representative is informed and believes and on that basis alleges that, in the four (4) years preceding the filing of the Complaint herein, Northwest has unlawfully collected or attempted to collect deficiency balances from consumers issued defective post repossession notices, without ever overcoming the statutory presumption barring the collection of such deficiencies in other instances.

38. In addition to the unlawful collection or attempt to collect deficiency balances from consumers, Northwest has maintained a practice and policy of reporting to three national consumer reporting agencies, to wit: Equifax, Experian and Trans Union (hereinafter referred to collectively as the "CRAs") derogatory information concerning the Class representative and the members of the class which failed to account for the statutory presumption described herein.

39. Under Virginia Code 8.9A-625(a), if a secured party is not proceeding in accordance with the Article 9A of the UCC as enacted by Virginia, a court may order or restrain collection, enforcement or disposition of collateral.

### *Class Action Allegations*

40. Campbell brings this action for herself and on behalf of all other persons, in a class defined as follows:

> (i) all natural persons, (ii) to whom Northwest sent–following repossession of the collateral–a Notice in a form substantially similar or materially identical to Exhibit 2 (iii) that omitted the location of the public auction of such collateral or the time after which a private sale would occur (iv) during the four-year period prior to the filing of this complaint through the date of class certification.

41. Campbell is informed and believes that the size of the proposed class exceeds 50 and is so numerous that joinder of all members would be impracticable. Campbell is unable to state the precise number of members of the proposed class, because that information is in the possession of Northwest.

42. There is a commonality of questions of law and fact common to the proposed class that predominate over questions affecting only individual members. These questions include, *inter alia*, whether the notice attached as Exhibit 2 violates the requirements of the applicable statutes, and if so, the result of such violation, such as whether Northwest is prohibited from seeking a deficiency from the debtor and/or how much in damages the debtor may be awarded because of the defective notice.

43. Campbell's claims are typical of those of the class she seeks to represent.

44. Campbell states that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include: (A) the class members' interests in individually controlling the prosecution or defense of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by or against class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action.

45. A class action is superior to other methods for the fair and efficient adjudication of this controversy.  Because the damages suffered by the individual class members may be relatively small compared to the expense and burden of litigation, it would be impracticable and economically infeasible for class members to seek redress individually. The prosecution of separate actions by the individual class members, even if possible, would create a risk of inconsistent or varying adjudications with respect to individual class members and would establish incompatible standards of conduct for the defendant.  Moreover, because most class members are unaware of their right to know the location of the public sale of their repossessed secured property, or the time after which a private sale would occur under the applicable statute, they are unlikely to bring an independent action, and a class action is the only way that these violations can be rectified.

46. Campbell contemplates that, subject to court approval, written notice shall be given to members of the proposed class, once the class is certified.

47. Injunctive relief is appropriate for the class. Class certification is appropriate because Northwest has acted on grounds generally applicable to the class, making equitable relief appropriate with respect to Campbell and the class members.

## FIRST CAUSE OF ACTION
### Violating the Virginia Code §8.9A-613, 614, 625 and 626

48. Campbell realleges and incorporates by reference the allegations set forth above.

49. The Notice, a copy of which is attached as Exhibit 2, failed to state the location of the public sale for repossessed collateral, contrary to Virginia Code §8.9A-613 and 614.

50. The Notice, a copy of which is attached as Exhibit 2, failed to state the time after which a private sale for repossessed collateral would occur, contrary to Virginia Code §8.9A-613 and 614.

51. This information has been determined by the legislature as being essential for the debtor's decision-making process with respect to the unpaid balance being claimed by a secured party (Northwest) following repossession of the collateral.

52. In particular, Campbell seeks class certification and a declaration that she and members of the class are not liable to Northwest for any deficiency balance following such sale; an injunction prohibiting Northwest from attempting to collect, directly or indirectly, any deficiency balance and requiring Northwest to refund any claimed deficiency balance it has collected from the class; an award of statutory damages against Northwest of not less than the credit service charge plus 10% of the principal amount of the obligation, under Virginia Code §8.9A-625; pre judgment interest to the extent permitted by law; and such other and further relief the Court deems just and proper.

## SECOND CAUSE OF ACTION
### For Declaratory Relief

53. Campbell realleges and incorporates by reference the allegations set forth above.

54. An actual controversy has arisen between Campbell and the members of the proposed class, on the one hand, and Northwest, on the other hand, as to their respective rights, remedies and obligations. Specifically, Campbell alleges that the acts and practices of Northwest as alleged, above, violate the UCC and are unlawful, unfair, and/or fraudulent, and that Campbell

8

and members of the class are therefore not liable, and never were liable, for any balances or the excessive balances represented. It is believed that Northwest contends or will contend to the contrary.

55. Accordingly, Campbell seeks a declaration as to the respective rights, remedies, and obligations of the parties.

### *Demand for Jury Trial*

56. Plaintiff demands a trial by Jury.

### *Prayer for Relief*

WHEREFORE, Plaintiff prays that this Court grant the following relief in her favor, and on behalf of the class, and that judgment be entered against the Defendant for the following:

1. For an order certifying this case as a class action;

2. For an order and judgment finding and declaring that Northwest's acts and practices as challenged herein are unlawful, unfair and fraudulent, including but not limited to an order restraining Northwest from any attempt to collect or enforce any claimed deficiency balance owed by Plaintiff or any Class Member;

3. For an order and judgment preliminarily and permanently enjoining Northwest from engaging in the practices challenged herein and from being able to collect any such amounts, whether by reporting such amounts on the affected debtor's credit reports, reporting a deficiency balance to any credit reporting agency, assigning or transferring such purported deficiency balance to any third party (such as a debt buyer or other debt collection agency), filing a lawsuit against such debtor for the deficiency balance, or entry of a default judgment against such debtor, and requiring Northwest to refund any moneys collected.

4. For an order of restitution in an amount to be determined at trial to restore to all affected debtors, in interest, all money acquired by means of Northwest's unlawful, unfair and fraudulent practices, which amount is at least equal to all sums collected for alleged deficiency balances, and all interest and profit earned thereon;

5. For an award of damages under Virginia Code §8.9A-625 and if the collateral is a consumer good, damages of not less than the credit service charge plus 10% of the principal amount of the obligation;

6. For pre-judgment interest to the extent permitted by law; and

7. For such other relief as the court may deem just and proper.

PLAINTIFF,
**TIFFANY CAMPBELL**,
Individually And On Behalf Of The Class,

/s/ Thomas R. Breeden
Thomas R. Breeden, Virginia Bar No. 33410
Thomas R. Breeden, P.C.
10326 Lomond Drive
Manassas, VA 20109
Tel: (703) 361-9277
Fax: (703) 337-0441
Email: trb@tbreedenlaw.com


Brian L. Bromberg
Bromberg Law Office, P.C.
26 Broadway, 27th Floor
New York, NY 10004
Tel: (212) 248-7906
Fax: (212) 248-7908
Email: brian@bromberglawoffice.com
(*Pro Hac Vice* to be filed)